Argued and submitted August 10, 2012, affirmed February 21, petition for review denied July 25, 2013 (353 Or 867)

**GRABHORN, INC.,**
an Oregon corporation,
*Plaintiff-Appellant,*

*v.*

**WASHINGTON COUNTY,**
a municipal corporation,
*Defendant-Respondent.*

Washington County Circuit Court
C104772CV; A148314

297 P3d 524

Wendie L. Kellington argued the cause for appellant. On the opening brief were Jeffrey M. Batchelor, Kerry J. Shepherd, Dallas S. DeLuca, and Markowitz, Herbold, Glade & Mehlhaf, P.C. With her on the reply brief were Kerry J. Shepherd, Dallas S. DeLuca, and Markowitz, Herbold, Glade & Mehlhaf, P.C.

Alan A. Rappleyea, County Counsel, argued the cause for respondent. With him on the brief was Office of Washington County Counsel.

Before Armstrong, Presiding Judge, and Sercombe, Judge, and Norby, Judge pro tempore.*

* Sercombe, J., *vice* Brewer, J.

NORBY, J. pro tempore.

**NORBY, J. pro tempore**

Plaintiff Grabhorn, Inc. (Grabhorn) appeals a trial court judgment that dismissed its claims for declaratory and injunctive relief, on the ground that the claims sought a land use decision over which the court lacked jurisdiction. Grabhorn's claims sought clarification about the applicability of a land use compatibility statement (LUCS) issued by Washington County in 1991 to a 2010 Department of Environmental Quality (DEQ) Application for a New Solid Waste Disposal Permit. The county argues that Grabhorn's appeal was made moot by the county's subsequent land use decision on Grabhorn's franchise application. We hold that the appeal is justiciable and that Grabhorn's claims sought a land use decision outside the trial court's jurisdiction. Accordingly, we affirm.

## I.  BACKGROUND

Grabhorn operates the Lakeside Reclamation Landfill business (Lakeside) in Washington County. Lakeside has been in continuous operation on the same property since the 1950s. In 1991, Grabhorn applied for a renewal of its solid waste disposal permit from DEQ to continue the Lakeside operations. As part of DEQ's approval process, Grabhorn secured the 1991 LUCS from the county.[1]

The 1991 LUCS identified Lakeside as a "[d]emolition landfill and recycling" facility. The LUCS incorporated an attachment with lengthy findings written by Grabhorn's attorney about the landfill component of Grabhorn's facility, including a finding that the county had declared Grabhorn's landfill operation to be a lawful nonconforming use twice, in 1972 and 1974. At the time the 1991 LUCS was issued, there were no standards in the county's Community Development

---

[1] ORS 197.180(1)(a) and (b) authorize state agencies, including DEQ, to take actions "authorized by law with respect to programs affecting land use[,] *** [i]n compliance with the [statewide planning] goals" and rules implementing the goals and related statutes, "[i]n a manner compatible with acknowledged comprehensive plans and land use regulations." A LUCS is a document state agencies use to determine whether permits and approvals affecting land use are consistent with local government comprehensive plans. A LUCS is required for nearly all DEQ permits and certain other DEQ approvals and certifications that affect land use, including renewals of permits that involve a substantial modification or intensification of the originally permitted activity. *See* OAR 660-031-0040.

Code defining or regulating "composting operations." The word "composting" does not appear in the 1991 LUCS, but findings in the attachment mention that a peripheral component of Grabhorn's landfill business was "turning demolition debris into useable mulch and wood chips."

Sometime between 1991 and 2010, Grabhorn stopped accepting solid waste for landfill as part of its business and expanded its recycling operations to the north to accommodate composting activity that extended into what was formerly a filbert orchard. By 2010, Lakeside was exclusively a composting operation.

DEQ issued Grabhorn's 1991 solid waste disposal permit based, in part, on the county's LUCS. DEQ also issued Grabhorn a composting permit in 1999 based in part on the 1991 LUCS. In 2007, DEQ notified Grabhorn that it must renew its permit. In 2009, as part of the permit-renewal process, DEQ instructed Grabhorn to apply for an "environmental risk screening," which required submission of a LUCS. Grabhorn resubmitted the 1991 LUCS. DEQ advised Grabhorn that the county had to confirm that the 1991 LUCS covered Lakeside's 2010 exclusive composting operation. Grabhorn sent the county a letter requesting (1) a written determination that the 1991 LUCS covered the 2010 "Application for a New Solid Waste Disposal Permit" made to DEQ for Grabhorn's composting facility and (2) a statement that the 1991 LUCS, including all representations in it that Grabhorn's business was a lawful nonconforming use, continued to apply.

The county sent a letter to DEQ on July 9, 2010, but its letter did not make the determination that Grabhorn had requested. Instead, the county's letter deferred to DEQ's judgment on whether the 1991 LUCS was sufficient, citing OAR 340-018-0050(2)(a)(C).[2] The county advised

---

[2] OAR 340-018-0050(2) provides, in part:

"The Department shall rely on the compatibility procedures described in Section III, subsection (3), and Section IV, subsections (2), (3), and (4) of the SAC Program document to assure compatibility with an acknowledged comprehensive plan, which include but may not be limited to the procedures described below:

"(a) An applicant's submittal of a LUCS which provides the affected local government's determination of compatibility:

that it had never received a request from Grabhorn for a composting facility on its site. The county said that it was unable to determine whether the DEQ application for the 2010 "composting operation" was covered by the 1991 LUCS, in part because the term "composting" was not in the LUCS. Most significantly, the county voiced concern that any factual or legal determination about the nonconforming status of Grabhorn's "composting operation" required the exercise of discretion and must be done in the context of a current application for a nonconforming use determination, not by analysis of a LUCS.[3] In essence, like DEQ, the county considered the change in Grabhorn's business from a "landfill and recycling facility" to a "composting only operation" to be an alteration that necessitated a new nonconforming use determination, because an altered nonconforming use must still comply with ORS 215.130(8).[4]

"(A) A LUCS shall be submitted with a Department application or required submittal information;

"(B) The Department shall rely on an affirmative LUCS as a determination of compatibility with the acknowledged comprehensive plan unless otherwise obligated by statute;

"(C) *If the Department concludes a local government LUCS review and determination may not be legally sufficient, the Department may deny the permit application and provide notice to the applicant.*"

(Emphasis added.)

[3] In the letter, the Interim Manager of the Washington County Department of Land Use and Transportation wrote, in part:

"As a threshold issue, it appears that it is DEQ's call as to whether the 1991 LUCS is adequate for purposes of accepting the current DEQ application. See OAR 340-018-0050(2)(a)(C). Although the county will complete a request for a LUCS, the question of whether an existing LUCS is sufficient is one for DEQ. The county has not received a request for a composting facility for this site.

"Notwithstanding, the county finds that it is unable to determine whether the application for the current 'composting operation' in 2010 is covered by the existing 1991 LUCS. The 1991 LUCS does not use the term 'composting' nor does it provide any particularity with regard to the nature and extent of the operation. More importantly, any factual or legal determination about the nonconforming status of the 'composting operation' requires the exercise of discretion and must be done in the context of an application for a nonconforming use determination under Chapter 440 of the Washington County Community Development Code."

[4] ORS 215.130(8) provides:

"Any proposal for the verification or alteration of a use under subsection (5) of this section, except an alteration necessary to comply with a lawful requirement, for the restoration or replacement of a use under subsection (6) of this section or for the resumption of a use under subsection (7) of this section shall be subject to the provisions of ORS 215.416. An initial decision by

On July 15, 2010, Grabhorn filed a complaint in the Washington County Circuit Court for declaratory and injunctive relief, asking the court to declare that the 1991 LUCS established Grabhorn's composting operation as a lawful nonconforming use and permanently excused Grabhorn from further county regulation. The complaint also asked the court to enjoin the county from doing anything to undermine Grabhorn's ability to continue its composting operations under the 1991 LUCS.

On March 17, 2011, the trial court dismissed Grabhorn's declaratory judgment claim for lack of jurisdiction, concluding that it sought a land use decision. Similarly, the court dismissed Grabhorn's injunctive relief claim for failure to state a claim over which the court had jurisdiction. Grabhorn appeals, assigning error to the dismissal of its claims.

After Grabhorn filed its notice of appeal on October 4, 2011, the county, through its board of commissioners, granted Grabhorn's "Solid Waste Franchise Application" to conduct its composting operations. In granting that application, the county made written findings that, "based on the evidence presented by the applicant[,] *** [the] composting operation is a lawful, non-conforming use" and "composting is part of the recycling business that has been ongoing and continuous since 1991, the last time a land use compatibility statement was issued for the property." On October 25, 2011, a third party appealed the county's

---

the county or its designate on a proposal for the alteration of a use described in subsection (5) of this section shall be made as an administrative decision without public hearing in the manner provided in ORS 215.416(11)."

Similarly, OAR 340-018-0050(2)(b) provides, in part:

"An applicant's submittal of a LUCS is required for the renewal or modification of the permits identified in OAR 340-018-0030 if the Department determines the permit involves a substantial modification or intensification of the permitted activity:

"(A) Renewal permits require a LUCS if a permit renewal involves a modification that requires a LUCS under paragraph (B) of this subsection;

"(B) Modification permits require a LUCS if:

"(i) The permitted source or activity relates to the use of additional property or a physical expansion on the existing property. The LUCS applies to physical changes on the property not to existing permit conditions[.]"

approval of Grabhorn's franchise application to the Land Use Board of Appeals (LUBA). That LUBA appeal is still pending.

## II. MOOTNESS

We begin with the county's argument that this appeal is moot. The county contends that its approval of Grabhorn's franchise application conferred the relief Grabhorn requested from the trial court, leaving no justiciable controversy. Grabhorn responds that the county's approval of its franchise application is contingent on the outcome of a pending LUBA appeal and lacks the finality of a declaratory judgment, so the parties' controversy is unremitting and remains justiciable.

The courts of this state derive "judicial power" from Article VII (Amended), section 1, of the Oregon Constitution. We have explained that judicial power does not include the authority to make court decisions that will no longer have a practical effect on the parties' rights. *Rose v. SAIF*, 200 Or App 654, 659-60, 116 P3d 913 (2005). Therefore, cases in which the crux of the controversy resolves before the appeal concludes become moot and are no longer justiciable.

After this appeal was filed, the parties' continuing interaction on the matter in controversy resulted in a county decision on Grabhorn's franchise application—a decision that could have rendered this appeal moot. But, instead of finally resolving the parties' core controversy, the county's decision generated an appeal to LUBA by a third party. The fact that review of the county's decision is still pending before LUBA precludes any conclusion that the county's subsequent action afforded Grabhorn final resolution of the matter involved in this appeal. Until the legality of the county's franchise decision becomes unalterable by legal process, the issue raised in this appeal is not rendered moot by the county's decision and order. Therefore, we conclude that this appeal is justiciable, and we turn to review of the trial court's jurisdiction.

## III. JURISDICTION

The trial court held that Grabhorn's request for a declaratory judgment and injunctive relief presented a land

use question outside its jurisdiction. ORS 197.825 vests LUBA with exclusive jurisdiction to review any land use decision or limited land use decision of a local government, special district, or state agency as provided in ORS 197.830 to 197.845. ORS 197.825(3) creates an exception that allows the trial court jurisdiction to grant declaratory, injunctive, or mandatory relief in limited circumstances, including proceedings that arise from decisions described in ORS 197.015(10)(b).

ORS 197.015(10) defines "land use decision":

"'Land use decision':

"(a)  Includes:

"(A)  A final decision or determination made by a local government or special district that concerns the adoption, amendment or application of:

"(i)  The goals;

"(ii)  A comprehensive plan provision;

"(iii)  A land use regulation; or

"(iv)  A new land use regulation[.]"

A decision about whether Grabhorn's current operation is permitted clearly involves the "application" of a "land use regulation," and therefore would appear to qualify as a "land use decision" subject to LUBA's exclusive jurisdiction under ORS 197.825. The subsections of ORS 197.015(10)(b) that follow, however, list a number of local government actions that are not "land use decisions." Two of those exceptions could conceivably apply here:

"(b)  Does not include a decision of a local government:

"(A)  That is made under land use standards that do not require interpretation or the exercise of policy or legal judgment;

"* * * * *

"(H)  That a proposed state agency action subject to ORS 197.180(1) is compatible with the acknowledged comprehensive plan and land use regulations implementing the plan, if:

"(i) The local government has already made a land use decision authorizing a use or activity that encompasses the proposed state agency action;

"(ii) The use or activity that would be authorized, funded or undertaken by the proposed state agency action is allowed without review under the acknowledged comprehensive plan and land use regulations implementing the plan[.]"

If one of those exceptions applies, then declaratory or injunctive relief is within the trial court's jurisdiction under ORS 197.825(3). However, as we explain below, we conclude that those exceptions do not apply.

A. *Decision of Local Government at Issue*

Any analysis under ORS 197.015 must begin by identifying the "final decision or determination made by a local government" at issue. Grabhorn's second amended complaint implicated two distinct determinations by Washington County: (1) the 1991 LUCS and (2) the July 9, 2010, letter declining to rule on the legal effect of the 1991 LUCS. Grabhorn sought a declaration that the 1991 LUCS constituted a legally sufficient county response to DEQ's 2010 request for a compatibility determination and requested injunctive relief based on that declaration. Because the county's July 9, 2010, action determined that the LUCS was legally insufficient, the relief Grabhorn requested from the trial court necessarily required a review of the substance of the July 9, 2010, county action. We conclude that Grabhorn's requested declaratory and injunctive relief, filed less than one week after the date of the county's letter, challenged the lawfulness of the county's July 9, 2010, decision.

Because the relief requested by Grabhorn sought review of a county land use decision, jurisdiction is exclusively vested in LUBA. ORS 197.825(1) ("[T]he Land Use Board of Appeals shall have exclusive jurisdiction to review any land use decision or limited land use decision of a local government[.]"). A local government's denial of a requested declaration of rights based on an interpretation of its land use regulations is a "land use decision" under ORS 197.015(10). *See Medford Assembly of God v. City of Medford*, 297 Or 138, 140, 681 P2d 790 (1984) (denial of requested interpretation

of conditional use permit ordinance is a "land use decision" for purposes of LUBA review).

More particularly, we have construed a local government's interpretation of its past land use decisions as a "land use decision" subject to LUBA's exclusive review. In *Terraces Condo. Assn. v. City of Portland*, 110 Or App 471, 823 P2d 1004 (1991), the city adopted an order interpreting the legal effect of two past variance decisions. LUBA reversed the city's determination and the developer appealed, contending, in relevant part, that LUBA lacked jurisdiction because the variance interpretation was not a "land use decision." We rejected that contention, reasoning that "the decision obviously entailed the application of * * * the city['s] land use regulations." *Id.* at 476-77. We concluded:

> "[T]he 'interpretation' of a variance necessarily involves the application of the land use regulations under and from which the variance was allowed. If interpretation is necessary to ascertain what the variance permitted, the regulatory provisions that governed variances and the uses in question when the variance was granted had to be considered along with the variance itself. A variance can only be understood by reference to the legislatively defined uses that it allows an applicant to vary from or to. Petitioners' contrary understanding would allow expanded noncomplying uses of land to be authorized on the basis of the perceived meaning of the order allowing the original noncomplying use, rather than on the land use regulations that determine what the order *could* have authorized and that the state legislature has required local governments to adopt and apply in authorizing uses of land."

*Id.* at 477 (footnote omitted; emphasis in original).

In *Sauvie Island Agricultural v. GGS (Hawaii), Inc.*, 107 Or App 1, 810 P2d 856 (1991), the plaintiff sought a declaratory judgment that the county's approval of a conditional use permit for a golf course development had lapsed. We concluded that the court lacked jurisdiction to grant that relief under ORS 197.825(3)(a):

> "[T]he only relief that plaintiff seeks is beyond the circuit court's authority. It asks the court to decide affirmatively that the [conditional use permit] approval had expired under sections 11.15.7010(C) and 11.15.7110(C). In other

words, it asks the court to make a land use decision. Whether 'substantial construction or development' has occurred is a question that requires the exercise of 'factual or legal judgment' and that the county must answer through a land use decision. *Doughton v. Douglas County*, 82 Or App 444, 728 P2d 887 (1986), *rev den*, 303 Or 74 (1987)."

*Sauvie Island Agricultural*, 107 Or App at 6. Similarly, here, Grabhorn sought a determination from the trial court that the LUCS remained effective and constituted a legally sufficient response to the DEQ inquiry, notwithstanding any change in business operations or potential violation of the county's nonconforming use ordinance provisions. That request asked the trial court to interpret the applicability of the 1991 LUCS in a manner contrary to the county's interpretation. As such, Grabhorn's action is either an improper appeal of the county's 2010 decision to the trial court, or an improper request for an initial land use decision from the trial court that would override the county's 2010 land use decision on the same subject. Either way, exclusive jurisdiction lies with LUBA, not with the trial court.

B. *Applicability of Statutory Exceptions to LUBA's Jurisdiction*

Our conclusion that Grabhorn's requested relief sought review of the county's July 9, 2010, decision abridges the analysis necessary to determine whether jurisdiction is diverted to the trial court through any statutory exception to the definition of "land use decision" endorsed by Grabhorn. ORS 197.015(10)(b)(A) allows a trial court to issue declaratory interpretations that do not involve the exercise of policy or legal judgment. But, review of the county's 2010 interpretation of its 1991 LUCS in this case does entail the exercise of policy and legal judgment, so that statutory exception does not apply.

The exceptions in ORS 197.015(10)(b)(H)(i) and (ii) apply only if a local government has already conclusively established that business practices are compatible with the comprehensive plan and all implementing land use regulations. Here, the county did not interpret its 1991 LUCS to conclusively establish compatibility for Grabhorn's

2010 business practices. Rather, the county determined that the 1991 LUCS was legally insufficient to establish that compatibility. Because compatibility was not conclusively established, the exceptions in ORS 197.015(10)(b)(H)(i) and (ii) also do not apply.

Grabhorn's requested relief from the trial court required a land use decision that does not fit the exclusions in ORS 197.015(10)(b)(A) or ORS 197.015(10)(b)(H)(i) and (ii) and is not otherwise within the trial court's jurisdiction. Accordingly, we reject Grabhorn's argument that the trial court had jurisdiction over Grabhorn's request for declaratory judgment and injunctive relief through a statutory exemption.

## IV.  CONCLUSION

We conclude that Grabhorn's appeal was not made moot by a subsequent county land use decision. We also conclude that Grabhorn's petition for declaratory and injunctive relief sought a land use decision outside the trial court's jurisdiction.

Affirmed.