678 November 13, 2025 No. 964

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

NORTHWEST ENVIRONMENTAL DEFENSE CENTER,
350PDX, Willamette Riverkeeper, Nancy Hiser,
Michael Pouncil, Laura Feldman, Sarah Taylor,
Shawn Looney, Laurie King, Lorene Scheer, Dean Hiser,
Darise Weller, Ann Ruttan, Jan Zuckerman, Dave Looney,
Susan Bladholm, Diane Meisenhelter, Dave King,
Katri Laukkanen, Joe Miller, and Sarah Heinecke,
*Petitioners,*

*v.*

CITY OF PORTLAND
and Zenith Energy Terminals Holdings, LLC,
*Respondents.*

Land Use Board of Appeals
2025019;
A187901

Argued and submitted August 20, 2025.

Jesse A. Buss argued the cause for petitioners. Also on the brief was Willamette Law Group, PC.

Lauren King argued the cause and filed the brief for respondent City of Portland.

Merissa Moeller, Emily P Warfield, and Stoel Rives, LLP, filed the brief for respondent Zenith Energy Terminals Holdings, LLC.

Before Ortega, Presiding Judge, Joyce, Judge, and Hellman, Judge.

ORTEGA, P. J.

Reversed and remanded.

ORTEGA, P. J.

Petitioners seek review of a Land Use Board of Appeals (LUBA) order in which LUBA determined that it lacked jurisdiction under ORS 197.015(10)(b)(H)(ii) to review a Land Use Compatibility Statement (LUCS) that the City of Portland issued to Zenith Energy Terminals Holdings, LLC. On review, based on the limited record before us, we conclude that LUBA did have jurisdiction because the findings attached to the LUCS contain a land use decision of the city to impose enforceable conditions of land use approval on Zenith's use of the property. Therefore, we reverse and remand.

Zenith operates a fossil fuel facility in the city, in an area zoned Heavy Industrial. The facility has a bulk petroleum and renewable fuels distribution terminal and an asphalt refinery. Under the city's land use code, Portland City Code (PCC) 33.920.300, Zenith's facility is categorized as a Bulk Fossil Fuel Terminal.

Zenith operates under Air Contaminant Discharge Permits (ACDP) issued in 2022 by the Oregon Department of Environmental Quality (ODEQ). To obtain those permits, Zenith requested a LUCS from the city using ODEQ's LUCS form, along with an attached written narrative. The city issued the 2022 LUCS, checking the box on the form that stated, "the activity or use is allowed; findings are attached." The attached findings were the written narrative that Zenith provided. Those findings, in addition to describing Zenith's operations, set out four conditions on Zenith's use that, upon approval of the 2022 LUCS, were "conditions enforceable by the City of Portland pursuant to PCC 33.700.030."[1] The findings also included "compliance measures" "to assure compliance with the limited use subject to this LUCS." No one challenged the 2022 LUCS.

---

[1] PCC 33.700.030, provides, in part:

"A.  Violations. It is unlawful to violate any provisions of this Title, a land use decision, or conditions of a land use approval. This applies to any person undertaking a development or land division, to the proprietor of a use or development, or to the owner of the land underlying the development or land division. For the ease of reference in this chapter, all of these persons are referred to by the term 'operator.'"

        The current case involves Zenith's request for updated permits from ODEQ to cover proposed operational changes to Zenith's facility. As explained by LUBA, "the changes include expanding the geographic scope of the [O]DEQ permits to include adjacent land owned by third parties, and installing new equipment to produce sustainable jet fuel." To obtain the new permits, Zenith submitted a new ODEQ LUCS form to the city, along with an attached written narrative.

        In February 2025, the city issued the 2025 LUCS, checking two boxes on the form. The first checked box provided that "the activity or use is allowed outright" and in the space below the city added: "PCC 33.140.100; Because it is allowed outright under Zoning Code and the Zoning Code has been aligned with the acknowledged comprehensive plan with respect to this use or activity by Ordinance No # 190978 it is compatible with the acknowledged comprehensive plan." The second checked box provided that "the activity or use is allowed; findings are attached." Again, the city attached as its findings the written narrative submitted by Zenith.

        Like the 2022 LUCS findings, the 2025 LUCS findings included a short description of Zenith's operations, four conditions enforceable by the city pursuant to PCC 33.700.030,[2] and "compliance measures" to assure compli-

_____

        [2] In front of the four limitations, the 2025 findings provide:

 "The Repositioned Facility will continue to be subject to the limitations and compliance measures imposed by the City under 2022-182133-000-00-PR (the '2022 LUCS') for so long as the pending ACDP application to which the 2022 LUCS and this LUCS pertains remains pending and the resulting ACDP permit remains in full force and effect (with such limitations being conditions enforceable by the City of Portland pursuant to PCC 33.700.030[4]). For the avoidance of doubt, the Repositioned Facility will be limited by the following after affirmative approval of this LUCS application (the 'Approval') and for so long as the aforementioned ACDP application remains pending and the resulting ACDP permit remains in full force and effect (with such limitations being conditions enforceable by the City of Portland pursuant to PCC 33.700.030[4])[.]"

——————————-

        "[4] To the extent the Oregon Dep't of Environmental Quality incorporates these limitations into the ACDP, they will also be enforceable by the Oregon Dep't of Environmental Quality under the ACDP. Regardless, though, these limitations will be enforceable with respect to the site—including, but not limited to, the current property owner/operator—by the City of Portland under the LUCS."

(Boldface omitted.)

ance with those conditions.[3] In short, the four conditions and the corresponding compliance measures require Zenith, according to the timeframes set out, to cease using railcar spots to transload crude oil and cease storing or handling crude oil, to disassemble and remove 30 storage tanks, to comply with a volatile organic compounds emission limit, and to cease asphalt refining. Zenith also is directed to provide access to the city to ensure compliance and provide various reports to the city to demonstrate compliance. Both the limitations and compliance measures in the 2025 LUCS findings contain additional details that were not in the 2022 LUCS findings. The 2025 LUCS findings also included a new section that analyzed the compatibility of Zenith's use with PCC Title 33 and the city's 2035 Comprehensive Plan.

Petitioners appealed the 2025 LUCS to LUBA, and the city and Zenith filed motions to dismiss, arguing that LUBA lacked jurisdiction. LUBA granted the motions to dismiss and transferred the appeal to the circuit court. LUBA decided the motions to dismiss without a documentary record from the city, basing its decision solely on the 2022 and 2025 LUCS attached to the parties' pleadings. In its order, LUBA concluded that the city's 2025 LUCS decision was excluded from its jurisdiction because it was not a land use decision under ORS 197.015(10)(b)(H)(ii). We describe LUBA's decision more fully below.

Petitioners now seek review of LUBA's order.

We review whether LUBA's order is "unlawful in substance." ORS 197.850(9)(a). A LUBA order is unlawful in substance "if it represent[s] a mistaken interpretation of the applicable law." *Mountain West Investment Corp. v. City of Silverton*, 175 Or App 556, 559, 30 P3d 420 (2001). In this case, we must determine whether LUBA legally erred in determining that the 2025 LUCS was not a land use decision under ORS 197.015(10)(b)(H)(ii).

---

[3] Before the compliance measures section, the 2025 LUCS findings provide:

"The applicant, which is the property owner/operator of the Repositioned Facility that is the subject of this LUCS, will continue to comply after the Approval of this LUCS with the following measures that were imposed by the 2022 LUCS to assure compliance with the limited use subject to this LUCS[.]"

"[T]he party seeking to invoke LUBA's review has the burden of proving that the challenged government action falls within the agency's jurisdiction." *Neice v. Prosper Portland*, 334 Or App 735, 737, 556 P3d 1065 (2024). LUBA has exclusive jurisdiction to review local government "land use decisions." ORS 197.825(1). A land use decision includes a local government decision that concerns the application of the statewide planning goals, a comprehensive plan provision, or a land use regulation. ORS 197.015(10)(a)(A). Typically, a LUCS concerns application of a comprehensive plan provision or land use regulation. As we have previously explained:

> "A LUCS is a document state agencies use to determine whether permits and approvals affecting land use are consistent with local government comprehensive plans. A LUCS is required for nearly all DEQ permits and certain other DEQ approvals and certifications that affect land use, including renewals of permits that involve a substantial modification or intensification of the originally permitted activity. *See* OAR 660-031-0040."

*Grabhorn, Inc. v. Washington County*, 255 Or App 369, 371 n 1, 297 P3d 524, *rev den*, 353 Or 867 (2013).

However, under ORS 197.015(10)(b)(H), the legislature has excluded from the definition of land use decision, and therefore LUBA's jurisdiction, three types of LUCS decisions. The exclusion at issue here is ORS 197.015(10) (b)(H)(ii), which provides that a land use decision does not include a decision of a local government that a proposed use or activity that would be allowed by a state agency's action is one that "is allowed without review under the acknowledged comprehensive plan and land use regulations implementing the plan[.]"

LUBA concluded that the city's first determination in the 2025 LUCS—the checked box for "allowed without review"—fell squarely within ORS 197.015(10)(b)(H)(ii) based on Zenith's proposed use being allowed outright as provided in PCC 33.140.100. LUBA also concluded that, viewed in context, the city's second determination—the checked box for "allowed; findings are attached"—was also consistent with that categorization because Zenith's proposed use was allowed outright under the city's land use regulations.

LUBA then addressed the four enforceable conditions included in the findings attached to the 2025 LUCS, stating that, if the facility is allowed outright and the jurisdictional exclusion applies, "then jurisdiction to review any challenges to the lawfulness of the conditions would lie with the circuit court, not LUBA." LUBA concluded that any resolution on the lawfulness of the conditions would not alter its conclusion that the use is "allowed without review" for purposes of the jurisdictional exclusion.

On review, petitioners make two arguments. They first argue that the inclusion of the four binding conditions of approval converts the LUCS into a discretionary land use decision. They further argue that the decision is in the form of a permit, relying on ORS 227.160(2) which defines "permit." Petitioners' second argument is that, even if the 2025 LUCS is not a discretionary land use decision, LUBA has jurisdiction to review the 2025 LUCS because the city relied on the four conditions for its LUCS decision.

Although we do not address whether the city's decision constitutes a "permit," we do agree with petitioners that the city's inclusion of the four conditions in the 2025 LUCS is a land use decision, as defined in ORS 197.015(10).[4] In the absence of the effect of ORS 197.015(10)(b)(H), which removes three types of LUCS decisions from the definition of a "land use decision," the 2025 LUCS decision would fall within the definition of a land use decision because it is a final decision of a local government concerning the application of the statewide planning goals, comprehensive plan, or land use regulations. ORS 197.015(10)(a)(A). The three types of LUCS decisions that are removed from the definition of land use decision are narrow. The one at issue here, which is set out in ORS 197.015(10)(b)(H)(ii), covers a decision of a local government that a proposed state agency action is compatible with the comprehensive plan and land use regulations, if the use is allowed without review under the plan and regulations. That is the only decision excepted from the definition of "land use decision" in that statutory provision. It follows that if a LUCS

---

[4] We do not need to address whether the city's decision to impose those conditions meets the definition of "permit" in ORS 227.160(2), as urged by petitioners, because the sole issue on review is whether the city's decision is a "land use decision" as defined in ORS 197.015(10).

decision of the local government folds in an additional land use decision—sometimes referred to as a "LUCS plus"—that does not fall within ORS 197.015(10)(b)(H)(ii), then that provision does not apply to the LUCS such that it is not a land use decision subject to LUBA's jurisdiction. What is at issue here is a "plus" decision the city added into the 2025 LUCS. *See Grabhorn, Inc.*, 255 Or App at 377 ("Any analysis under ORS 197.015 must begin by identifying the 'final decision or determination made by a local government' at issue.").

In the 2025 LUCS, the city imposed conditions that are enforceable under PCC 33.700.030 upon approval of the 2025 LUCS. PCC 33.700.030(1) provides that it is "unlawful to violate any provisions of this Title, a land use decision, or conditions of a land use approval" and that it "applies to any person undertaking a development or land division, to the proprietor of a use or development, or to the owner of the land underlying the development or land division." The city's decision to impose those conditions and find that they are enforceable under PCC 33.700.030 necessarily required the city to determine that the conditions are "conditions of land use approval."[5] The city's imposition of those conditions also necessarily required the city to conclude that it could impose such conditions within a LUCS. Those are decisions concerning the application of the city's land use regulations, ORS 197.015(10)(a)(A), and are not decisions described in ORS 197.015(10)(b)(H)(ii). It cannot be petitioners' burden to demonstrate that the city had authority to include those conditions of approval in the 2025 LUCS in order to establish LUBA's jurisdiction, as concluded by LUBA. Petitioners met their burden to establish LUBA's jurisdiction by showing that *the city* made a land use decision by imposing the conditions of approval in the 2025 LUCS.

In so concluding, we emphasize why we are rejecting LUBA's framing of the issue. Here, LUBA determined that Zenith's proposed use was correctly categorized by the city as one that is allowed without review under the city's code. LUBA then determined that, as a result, the fact that the city also included four enforceable land use conditions

---

[5] The city code defines "land use approval" as "[a] land use decision for approval or approval with conditions. It includes any time limits or other restrictions that may apply to the land use decision." PCC 33.910.030.

in the 2025 LUCS was of no consequence because the conditions did not affect that the proposed use was allowed without review under the city's code. That framing, however, expands the narrow exception from the definition of land use decision in ORS 197.015(10)(b)(H)(ii) to cover local government decisions that are properly categorized as land use decisions under ORS 197.015(10), as long as they are folded into a LUCS. We do not read the statute as allowing that expansion. The text of ORS 197.015(10)(b)(H)(ii) excludes from the definition of land use decision only a local government decision that a proposed agency action is allowed without review. It does not cover other decisions of a local government that are land use decisions, even if such a decision is placed in a LUCS. It does not matter that the city could have issued the 2025 LUCS without inclusion of the four enforceable land use conditions, because that is not what the city did.[6]

      In supporting LUBA's view, the city argues that the 2025 LUCS is excluded from LUBA's jurisdiction because the four conditions are not conditions of approval to develop land, were not necessary to approve the LUCS, and did not involve discretionary approval because the conditions themselves do not set out actions that would require land use review. We reject those arguments because, on the face of the 2025 LUCS—which is all we have in this procedural posture—the city did impose the conditions as conditions of land use approval when it explicitly stated they were enforceable under PCC 33.700.030. The city code further provides that "land use approval" means a "land use decision for approval or approval with conditions," PCC 33.910.030, and that the city "may attach conditions to the approval of all discretionary reviews," PCC 33.800.070. Whether or not the city correctly imposed those conditions under its code is not the issue before us; rather, the issue is whether its decision to do

_____

[6] To be clear, our decision is not based on the mere fact that the city checked the box "allowed; findings attached" and then attached findings to the 2025 LUCS. The instructions for the ODEQ LUCS form required the city to make findings. The issue here is that the attached findings were not just findings about Zenith's proposed use and the compatibility of that use with the city's comprehensive plan and land use regulations. The findings also contained enforceable conditions of land use approval that became effective upon the city's approval of the 2025 LUCS.

so was a land use decision under ORS 197.015(10). Based on the face of the 2025 LUCS and in light of the city's code, it was.

We also reject Zenith's argument, made in addition to the arguments of the city, that the conditions were merely part of the description of Zenith's use of the property. The text in the 2025 LUCS findings that precede the conditions refutes that position. The conditions expressly state:

> "The Repositioned Facility will continue to be subject to the limitations and compliance measures imposed by the City under 2022-182133-000-00-PR (the '2022 LUCS') ***. *For the avoidance of doubt*, the Repositioned Facility will be limited by the following *after affirmative approval of this LUCS application* (the 'Approval') and for so long as the aforementioned ACDP application remains pending and the resulting ACDP permit remains in full force and effect (*with such limitations being conditions enforceable* by the City of Portland pursuant to PCC 33.700.030)[.]"

(Emphases added; boldface and footnote omitted.) The footnote to that section further clarifies that, regardless of what ODEQ does with the conditions, they "will be enforceable with respect to the site *** by the City of Portland *under the LUCS*." (Emphasis added.) The text of the findings does not provide that the conditions are merely a description of Zenith's current use of the property. Instead, the conditions unambiguously state that, to avoid the doubt that the conditions imposed in the 2022 LUCS might not be enforceable, the conditions are imposed by the 2025 LUCS and enforceable under PCC 33.700.030 after approval of the 2025 LUCS.

In sum, we conclude that LUBA's order is unlawful in substance because the 2025 LUCS was not only a decision that Zenith's proposed use was allowed without review under the city's comprehensive plan and land use regulations. The city also imposed enforceable conditions of land use approval on Zenith's property in the 2025 LUCS, which is a land use decision under ORS 197.015(10), and, thus, the city's decision is subject to LUBA's exclusive jurisdiction.

Reversed and remanded.