Submitted April 6, affirmed June 29, petition for review denied
November 3, 2016 (360 Or 568)

Howard GRABHORN
and Grabhorn, Inc.,
*Petitioners,*

*v.*

WASHINGTON COUNTY
and Arthur J. Kamp,
*Respondents.*

Land Use Board of Appeals
2015018; A161415

379 P3d 796

Wendie Kellington and Kellington Law Group, PC, filed the briefs for petitioners.

Jacquilyn Saito-Moore filed the brief for respondent Washington County.

Arthur J. Kamp filed the brief *pro se.*

Before Armstrong, Presiding Judge, and Egan, Judge, and Shorr, Judge.

## ARMSTRONG, P. J.

Petitioners Howard Grabhorn and Grabhorn, Inc.,[1] seek judicial review of an order of the Land Use Board of Appeals (LUBA) that affirmed a Washington County hearings officer's decision denying petitioners' application to verify that a composting facility on their property is a lawful nonconforming use. Petitioners contend that "LUBA made a decision unlawful in substance and unsupported by substantial evidence in affirming the Hearings Officer's decision on the grounds that Petitioner[s'] composting operation had not been lawfully established in 1962 or in 1984," advancing several arguments in support of that contention. We reject each of those arguments and affirm.

### I. FACTUAL BACKGROUND

The procedural history of this case is convoluted, and, as discussed below, it is not the first time that proceedings related to the parties' dispute have been before us. We begin by setting out that history as described by LUBA in its final opinion and order:

"Sometime in the 1950s the Grabhorn family began operating a landfill on portions of three parcels, tax lot 2302, tax lot 100 and tax lot 2600. The three tax lots are currently zoned Exclusive Farm Use (EFU) and consist of high-value farmland. In 1962, county zoning was first applied to the three parcels. The F-1 zone applied in 1962 did not allow a landfill operation (or 'solid waste disposal site' in current regulatory parlance) as either a permitted or conditional use. The county zoned the property EFU in 1984. The EFU zone allows solid waste disposal facilities as a conditional use. However, the Land Conservation and Development [Commission] (LCDC) administrative rules that apply to the EFU zone do not allow establishment of a solid waste disposal site on high value farmland, although existing solid waste disposal sites may continue and even be expanded on the same tract, even if they are nonconforming uses.

"At all relevant times since 1962, the county has recognized the landfill operation on the Grabhorn property as a lawful nonconforming use. That landfill operation was

[1] Howard Grabhorn is president of Grabhorn, Inc.

closed in 2009. The focus of the current application is the composting facility that petitioners currently operate on a six-acre portion of tax lot 2302. As explained below, under current regulations a composting facility is a particular type of solid waste disposal facility. Generally, the composting process as currently used at petitioners' facility involves receiving 'feedstock' (yard debris, brush, stumps, and other woody debris), chipping the feedstock in a grinder, placing the ground-up feedstock into a pile, aerating the pile periodically by turning it with an excavator, and adding leaves, grass and water periodically to aid decomposition by microbes. Once the material in the pile is sufficiently decomposed or 'cooked,' in industry parlance, the material is screened to sort finer and coarser materials. The finer materials are placed in a separate curing pile for additional curing, and the coarser materials reground and placed back in the compost pile. The end product, compost, is sold to commercial customers, primarily for soil amendments.

"* * * * *

"In 1991 the county issued a land use compatibility statement (LUCS) at the request of the Department of Environmental Quality (DEQ), which verified the landfill operation as a lawful nonconforming use. * * *

"In 1997, DEQ adopted regulations governing composting facilities, and in 1999 issued a DEQ permit specifically for petitioners' composting facility. As noted, in 2009 the landfill operation closed, but the composting facility continued to operate. In 2009, petitioners sought renewal of the DEQ permit for the composting facility. To satisfy DEQ requirements to demonstrate that the composting facility is compatible with the county's land use regulations, petitioners took the position that the 1991 LUCS recognized the composting facility as a lawful nonconforming use, and requested that the county issue a LUCS to that effect. However, in a letter dated July 9, 2010, the county planning director stated that the county was unable to determine whether the 1991 LUCS included the composting facility, in part because the term 'composting' was not used in the 1991 LUCS. The letter suggested that petitioners file an application to verify the composting facility as a nonconforming use. Instead, petitioners filed an action in circuit court challenging the July 9, 2010 letter, and seeking a declaratory ruling that the 1991 LUCS includes the composting facility. The circuit court dismissed the action,

concluding that it lacked jurisdiction. Petitioners appealed to the Court of Appeals, which affirmed, after concluding that the July 9, 2010 letter was a 'land use decision' subject to LUBA's jurisdiction, and jurisdiction to review that letter, or any county determinations regarding the scope of the 1991 LUCS, lies with LUBA. *Grabhorn, Inc. v. Washington County*, 255 Or App 369, 297 P3d 524, *rev den*[,] 353 Or 867 (2013) [*Grabhorn I*].

"While the [*Grabhorn I*] appeal was pending before the Court of Appeals, petitioners applied to the county for a franchise for the composting facility, pursuant to Washington County Code (WCC) 8.08. WCC 8.08 is not part of the county's land use code, and a decision approving or denying an application for a franchise agreement is not typically processed as a land use decision or land use permit. However, because staff raised issues regarding the pending appeal and the nonconforming use status of the composting facility, the commissioners held a public hearing on the franchise application. On September 20, 2011, the commissioners made a tentative decision that the composting facility is a lawful nonconforming use and to approve the application. On October 4, 2011, the commissioners adopted staff findings concluding that the composting facility is a lawful nonconforming use, and directed staff to negotiate a franchise agreement with petitioners. The parties refer to the October 4, 2011 decision as the '2011 franchise authorization.' Arthur J. Kamp, intervenor-respondent (intervenor) in the present appeal, appealed the 2011 franchise authorization to LUBA, where that appeal was suspended.

"Meanwhile, during the proceedings before the Court of Appeals on the appeal of the circuit court's decision regarding the July 9, 2010 letter, the county took the position that the 2011 franchise authorization constituted a determination that the composting operation is a lawful nonconforming use, and thus the appeal of the circuit court's decision regarding the July 9, 2010 letter was now non-justiciable and moot. The Court of Appeals disagreed that the 2011franchise authorization mooted the appeal. Because the appeal of the 2011 franchise authorization was presently pending before LUBA, the Court concluded, the appeal of the circuit's court decision remained justiciable. [*Grabhorn I*,] 255 Or App at 375. The Court then proceeded to address the merits and, as noted, affirmed the circuit court decision to dismiss petitioners' action. The Court's decision became final in late 2013.

"Thereafter, on January 21, 2014, the county and petitioners entered into a franchise agreement for the composting facility. Condition 1 of the 2014 franchise agreement required petitioners to file an application with the county to verify the composting facility as a nonconforming use. Seven days later, LUBA granted the petitioner Kamp's motion for voluntary dismissal of his appeal of the 2011 franchise authorization. *Kamp v. Washington County,* ___ Or LUBA ___ (LUBA No. 2011-098, January 28, 2014).

"On May 21, 2014, petitioners submitted an application to verify the composting facility as a lawful nonconforming use, pursuant to Condition 1 of the 2014 franchise agreement. On October 10, 2014, county planning staff issued a decision verifying the composting facility as a nonconforming use, with conditions. Both petitioners and opponents appealed the decision to the hearings officer. The hearings officer conducted a hearing on the appeals and, on March 31, 2015, issued the decision challenged in this appeal, denying petitioners' application to verify the composting facility as a lawful nonconforming use. * * * [T]he hearings officer concluded that a composting facility did not exist on the property until 1989, at the earliest, after the date that EFU zoning was applied to the property in 1984. The hearings officer ultimately concluded that petitioners did not satisfy one of the elements for a lawful nonconforming use, that the use was lawfully established. The hearings officer rejected petitioners' arguments that the 1991 LUCS or the 2011 franchise authorization compelled the conclusion that the composting facility is a lawful nonconforming use."

(Footnotes and record citation omitted.)

LUBA ultimately issued a final order affirming the county hearings officer's decision denying petitioners' application for verification of their composting facility as a lawful nonconforming use. It is that order that is the subject of this judicial review.

## II. ANALYSIS

As mentioned, petitioners contend on review that LUBA's order affirming the hearings officer's decision is unlawful in substance and unsupported by substantial evidence. After explaining the pertinent standards of review, we consider each of petitioners' arguments in support of that position in turn, relating additional pertinent facts and the

details of the hearings officer's and LUBA's analyses as necessary to resolve those challenges.

A. *Applicable Standards of Review*

We begin with the standard applicable to LUBA's review of the county's decision, which is set out in ORS 197.835. That statute, as pertinent here, provides that LUBA must reverse or remand a land use decision if it concludes that the local government that made the decision "[f]ailed to follow the procedures applicable to the matter before it in a manner that prejudiced the substantial rights of the petitioner," ORS 197.835(9)(a)(B); "[m]ade a decision not supported by substantial evidence in the whole record," ORS 197.835(9)(a)(C); or "[i]mproperly construed the applicable law," ORS 197.835(9)(a)(D). In evaluating a land use decision for "substantial evidence," LUBA must consider all the evidence in the record. *Younger v. City of Portland*, 305 Or 346, 358, 752 P2d 262 (1988). A finding is supported by substantial evidence "[i]f, viewing the record as a whole, a reasonable person could make the disputed factual finding." *Stevens v. City of Island City*, 260 Or App 768, 772, 324 P3d 477 (2014). If that standard is satisfied, "LUBA cannot substitute its view of the evidence for that of the local government." *Id.*

Our review of LUBA's order is even more circumscribed. *Id.* As pertinent here, we can reverse or remand only if we determine that LUBA's order is "unlawful in substance or procedure" or "not supported by substantial evidence in the whole record as to facts found by [LUBA] under ORS 197.835(2)." ORS 197.850(9)(a), (c). LUBA's decision may be "unlawful in substance" if LUBA fails to properly understand and apply its substantial evidence review obligation under ORS 197.835(9)(a)(C). *Younger*, 305 Or at 358. Otherwise, where LUBA has properly articulated that standard, we will not reverse its determination unless "[t]he evidence in [the] case [is] so at odds with LUBA's evaluation that a reviewing court could infer that LUBA had misunderstood or misapplied its scope of review." *Id.* at 359. In other words, where LUBA has properly understood and applied the substantial evidence test, we must affirm its order "notwithstanding [our] disagreement with LUBA as

to whether the evidence is 'substantial.'" *Id.* at 358. We give no deference to LUBA's rulings on legal questions. *Recovery House VI v. City of Eugene,* 150 Or App 382, 389, 946 P2d 342 (1997).

B. *Establishment of Nonconforming Use*

ORS 215.130(5) provides that "[t]he lawful use of any building, structure or land at the time of the enactment or amendment of any zoning ordinance or regulation may be continued."[2] Accordingly, a person is entitled to "continue a nonconforming use of land, so long as that use was lawful before a change in zoning made that use nonconforming." *Lawrence v. Clackamas County,* 180 Or App 495, 501, 43 P3d 1192, *rev den,* 334 Or 327 (2002). In addition,

"[f]or purposes of verifying a use under subsection (5) of [ORS 215.130], a county may not require an applicant for verification to prove the existence, continuity, nature and extent of the use for a period exceeding 20 years immediately preceding the date of application."

ORS 215.130(11).

As the result of the enactment of subsection (11) of ORS 215.130, the requisite time period for which an applicant for a nonconforming-use determination must prove that the use has persisted is limited to no more than 20 years before the date of the application. *Lawrence,* 180 Or App at 504. However, as we made clear in *Aguilar v. Washington County,* 201 Or App 640, 650, 120 P3d 514 (2005), *rev den,* 340 Or 34 (2006), the enactment of subsection (11) did not "alter the requirement that, to prove the existence of a nonconforming use, the applicant must establish its lawfulness before the zoning or regulation went into effect." (Footnote omitted.) Thus, to prove the existence of a nonconforming

[2] Washington County Community Development Code (CDC) section 440 implements ORS 215.130. *See* ORS 215.130(10) (authorizing local government to adopt standards and procedures implementing ORS 215.130). As relevant here, CDC 440-1 provides, in part:

"A nonconforming use is a structure or use of land which does not conform to the provisions of this Code or Comprehensive Plan lawfully in existence on the effective date of enactment or amendment of this Code or Comprehensive Plan. It is the intent of this Section to allow and regulate existing uses and structures that were lawfully established and are not now in conformance with the applicable regulations of this Code."

use, the applicant must establish (1) "that a use continued interrupted for the specified period of time" (here, the 20-year "look-back" period); and (2) "that the use was lawful at the time a zoning ordinance or regulation went into effect." *Id.* at 648 (footnote omitted).

In this case, it is undisputed that petitioners satisfied the first of those prerequisites—that is, they established that the composting use continued uninterrupted during the 20-year "look back" period of ORS 215.130(11), from 1994 to 2014, when petitioners filed the application that is the subject of this case. Instead, the parties' dispute here is over the second requirement: whether petitioners had a lawfully established composting operation on the property on the date that restrictive zoning made it a nonconforming use.

With respect to the nonconforming-use date, we pause to note that, below, the parties understood that date to be in 1962, when the county first zoned the property F-1. However, in issuing its decision, the hearings officer cited 1984, when the property was zoned EFU, as the measuring point, concluding that "[t]he applicant has not carried its burden of proof to establish that 'composting' was taking place on the site as of the date when County zoning regulations prohibiting the use went into effect *in 1984*." (Emphasis added.) LUBA ultimately determined that the hearings officer had erred in using 1984 as the nonconforming-use date, but the error was harmless. We discuss petitioners' challenge to that aspect of LUBA's decision later in our opinion. 279 Or App at 208-09.

We first address, however, petitioners' contention that, regardless whether the proper nonconforming-use date is in 1962 or 1984, LUBA misapplied the substantial evidence test in affirming the hearings officer's finding that petitioners had not engaged in composting on the property until 1989, at the earliest, because LUBA "looked to the 'whole record'" for evidence supporting the hearings officer's findings, "including irrelevant years to the nonconforming use legal question." Petitioners contend that, under *Lawrence*, evidence bearing on whether composting was occurring on the property at times *other* than the nonconforming-use date

is irrelevant to LUBA's assessment, and the *only* evidence in the record as to that date—whether in 1962 or 1984—establishes that composting was occurring on the property.

The evidence on which petitioners rely for that proposition consists of declarations of petitioner Howard Grabhorn and of Lewis Bierly, Grabhorn's employee since 1971, both of whom averred that petitioners' operations included composting at those respective times. Accordingly, in petitioners' view, no reasonable factfinder could find otherwise, and LUBA's affirmation of the hearings officer's decision to the contrary is therefore unlawful in substance.

We disagree. First, to the extent petitioners are arguing that, under *Lawrence*, LUBA was not allowed to consider evidence in the record from periods after the applicable zoning went into effect to determine whether the hearings officer correctly found that the use did or did not exist at the time of that zoning, petitioners are wrong. As discussed above, *Lawrence* establishes that an applicant for a nonconforming-use determination need not prove that the use in question had never been interrupted or abandoned—as was required before the enactment of ORS 215.130(11)—only that the use had not been interrupted or abandoned in the 20 years immediately preceding the date of the application. However, it does not follow from that principle that, in reviewing whether the hearings officer properly found that petitioners had not established the other requirement for a nonconforming-use determination—*viz.*, that the use lawfully existed on the property at the time that zoning made it nonconforming—LUBA is limited to considering only evidence "from the people present in the relevant time period." In short, petitioners' argument is a *non sequitur*.

Petitioners also are mistaken that the Grabhorn and Bierly declarations, because they represent the only evidence in the record about what was occurring on petitioners' property from people who were present there in 1962 and 1984, respectively, are *conclusive* as to whether the use was established at those times. That assertion misapprehends LUBA's review task. As discussed earlier, in reviewing for substantial evidence, LUBA must determine whether the record—*considered as a whole*—would allow a reasonable

person to make the finding that the hearings officer did. ORS 197.835(9)(a)(C) (substantial evidence determined by reference to the "whole record"); *Stevens*, 260 Or App at 772 (finding is supported by substantial evidence if, "viewing the record as a whole, a reasonable person could make the disputed factual finding"). LUBA properly applied that standard here.

LUBA observed that the hearings officer had examined contemporaneous records from the county, Metro, and DEQ—governmental entitities whose responsibilities include regulating or inspecting solid waste facilities—which indicated that the only recycling activities occurring on the property before 1989 were the grinding or chipping of woody waste, and that there were recognized differences at the time between those activities and "composting." As LUBA noted, the hearings officer also considered the testimony submitted by petitioners and determined that, although it provided some evidence that composting was being conducted on the property, it ultimately was not persuasive because the governmental documentation did not support it. Ultimately, LUBA sustained the hearings officer's finding that composting activities were not occurring on petitioners' property before 1989, explaining:

"In our view, based on the evidence in the whole record, a reasonable decision-maker could have chosen to rely on the declarations and other evidence that petitioners submitted, to conclude that 'composting,' as that term is properly understood, was occurring on the subject property in 1962 when the property was zoned to prohibit solid waste facilities of any kind. However, we cannot say that that conclusion is compelled by the evidence in the whole record, or that a reasonable decision-maker could not have reached the contrary conclusion the hearings officer did: that composting as that term is properly understood did not occur on the subject property until 1989, at the earliest, long after the date a composting facility on the property became prohibited or required discretionary approval.

"As the hearings officer's findings note, the county's code as early as 1969 distinguished between a landfill and a 'composting plant,' and defined composting to mean the biochemical degradation of organic waste under controlled conditions. However, none of the county permits issued

for the landfill in the 1970s and 1980s or other relevant county documents issued prior to the early 1990s mention composting occurring on the property. The hearings officer noted that a 1989 county publication described petitioners' yard debris recycling operation as 'Grind only,' as distinct from another facility which was described as 'Grind & compost.' The hearings officer observed that the 'appropriate inference from this evidence is that the County understood the difference between a facility that "composted" under the County definition and a facility that only ground up yard debris.' According to the hearings officer, the county documentation was consistent with similar documentation from Metro and DEQ, which prior to the early 1990s include no mention of composting occurring on the subject property, and at best described recycling efforts on the property to involve only grinding of yard debris.

"A reasonable decision-maker could infer, as the hearings officer did, from the omission of any mention of composting on the property in the contemporaneous documentation prior to the early 1990s that composting did not occur on the property prior to that period. That inference conflicts with the declarations of Howard Grabhorn and others, to the effect that composting ('cooking') occurred on the property in the 1970s and 1980s and, more importantly, prior to 1962, the date solid waste facilities, including composting facilities, became nonconforming on the property. The hearings officer resolved that conflict in the evidence by choosing to rely on the reasonable inferences to the contrary drawn from the county, Metro and DEQ documentation. We cannot say that the resolution of the conflicting evidence was unreasonable."

That analysis reflects that LUBA applied the correct "substantial evidence" standard under ORS 197.835 (9)(a)(C). LUBA did not substitute its view of the evidence for that of the local government, but, rather, looked to evidence in the record as a whole—including, but not limited to, petitioners' declarations—to determine whether the county's decision was reasonable. *Younger*, 305 Or at 360.

We also do not consider the evidence to be "so at odds with LUBA's evaluation" that we could "infer that LUBA had misunderstood or misapplied its scope of review." *Id.* at 359. The thrust of petitioners' argument is that no reasonable

person could find that composting was not occurring on the property because the "only" evidence in the record from the relevant time frame establishes that it was. As explained above, petitioners' assertion that the Grabhorn and Bierly declarations provided the "only" relevant evidence is incorrect. Moreover, as LUBA concluded, the hearings officer properly considered all of the evidence in the record and found that contemporaneous governmental documentation indicating that composting did not take place on the property until 1989 or the early 1990s was more persuasive than petitioners' declarations. We are not persuaded that LUBA misapplied the substantial evidence standard in determining that that weighing of the evidence was reasonable.

As noted, 279 Or App at 204, petitioners also contend that LUBA erred in determining that the hearings officer's reliance on 1984, rather than 1962, as the relevant nonconforming-use date, without informing the parties of that fact, was harmless and did not prejudice petitioners' substantial rights.[3] They contend that the hearings officer's error was not harmless because they "would [have] present[ed] additional evidence of composting in 1984 had they known the Hearings Officer's view."

LUBA reasoned that the hearings officer "reviewed all the evidence regarding use of the property back to 1962 and beyond, and ultimately rejected petitioners' claims that evidence of wood chipping or similar recycling operations [conducted before] 1989 constituted 'composting.'" Because that finding was supported by substantial evidence, LUBA continued, "[w]hether [the] date is 1962 or 1984, petitioners failed to demonstrate that the composting facility was lawfully established on the date zoning was applied that made that use nonconfoming." LUBA reasoned:

"Any remand to correct the hearings officer's erroneous reference to 1984 would focus on the correct date of 1962.

---

[3] On appeal before LUBA, petitioners contended that the hearings officer committed procedural error in using 1984 rather than 1962 as the relevant date. See ORS 197.835(9)(a)(B) (authorizing LUBA to reverse local government decision for "[f]ail[ure] to follow the procedures applicable to the matter before it in a manner that prejudiced the substantial rights of the petitioner").

However, petitioners had a full opportunity to present, and did present, evidence intended to demonstrate that the composting facility was established on the property prior to 1962."

We agree with LUBA that the error was harmless. Petitioners presented evidence of composting use on the property as far back as 1962; notwithstanding that evidence, the hearings officer found that composting activities did not begin until 1989, at the earliest. We have affirmed LUBA's determination that that finding was supported by substantial evidence. Given that, the flaw in the hearings officer's use of 1984 as the target date is of no consequence to petitioners. In other words, if the composting activities did not begin until 1989, it makes no difference whether the correct date was 1962 or 1984—petitioners did not meet their burden of establishing that the use lawfully existed on the date zoning made the use nonconforming. LUBA correctly concluded that the error did not prejudice petitioners' substantial rights.

C.  *Prior County Actions*

Alternatively, petitioners contend that two prior county actions—*viz.*, the 2011 franchise authorization and the 1991 Land Use Compatibility Statement (1991 LUCS)—are preclusive on whether petitioners' composting operation is a lawful nonconforming use and, hence, that the denial of petitioners' application is an impermissible collateral attack on those actions. In other words, petitioners contend that the county was required to approve their application for verification of a nonconforming use because the 2011 franchise authorization or the 1991 LUCS had conclusively established the use to be lawful, and LUBA's decision to the contrary is therefore unlawful in substance. We consider the import of each governmental action in turn, and, as explained below, we disagree on both counts.

1.  *2011 franchise authorization*

As related in our recitation of facts, the 2011 franchise authorization refers to the October 4, 2011, action of the Washington County Board of Commissioners approving petitioners' application under WCC 8.08 for a franchise

agreement to operate a compost facility.[4] In connection with that authorization, the board adopted the following finding:

"Chapter 8.08.440 requires that an applicant not be in violation of Chapter 8.08, state statutes or rules and regulations. The only issue is whether under land use laws, composting is allowed on applicant's site. *At its regular meeting on September 20, 2011, the Board found that based on the evidence presented by the applicant that the Grabhorn, Inc. composting operation is a lawful, non-conforming use based on the continuing composting operation on the site.* Furthermore, based on the evidence submitted by the applicant, composting is part of the recycling business that has been ongoing and continuous since 1991, the last time a land use compatibility statement was issued for the property."

(Emphasis added.)

However, the board also directed the staff "to negotiate a Franchise Agreement for the composting operation with [petitioners]." And, the final franchise agreement, entered into by the county and petitioners on January 21, 2014, as noted, was subject to a condition requiring petitioners to obtain a final nonconforming-use determination for the composting facility. Specifically, Condition 1 states:

"1.   A requirement of this Franchise Agreement is that Franchisee has a valid land use. As a condition of approval the Franchisee must:

"1)   Submit an application with the Washington County Department of Land Use and Transportation for a Type II determination of a non-conforming use within ONE HUNDRED TWENTY (120) days of the Effective Date of this Agreement. 2) Have its application for a non-conforming use accepted as complete by the Washington County Department of Land Use and Transportation within ONE HUNDRED EIGHTY (180) days of submittal, and, 3) Receive a final non-conforming use determination for the Facility granted by

---

[4] WCC section 8.08.060 requires that operators of disposal sites obtain a county franchise issued by the board of commissioners. Composting facilities are considered disposal sites as defined in WCC 8.08.030(9).

the Washington County Department of Land Use and Transportation, after any appeals."

The hearings officer noted that the record did not explain the "inconsistency between the 2011 findings and the 2014 franchise" but concluded that the 2014 franchise agreement controlled. LUBA affirmed the hearings officer, explaining, in part:

"[T]he 2014 franchise agreement and Condition 1 effectively superseded whatever preclusive effect the 2011 franchise authorization might have otherwise had. In short, the hearings officer, in giving effect to Condition 1 and evaluating the application for nonconforming use verification under the applicable standards, did not 'collaterally attack' the 2011 franchise authorization."

On review, petitioners contend that LUBA's conclusion that the county commission's 2011 franchise authorization "was not a binding land use decision and that it did not conclusively decide [that] the composting operation was lawfully established" is unlawful in substance. They argue to us, as they did below, that the 2011 franchise authorization was a final land use decision with preclusive effect and that it that may not now be "collaterally attacked." According to petitioners, when the LUBA appeal of the 2011 franchise authorization in *Kamp* was voluntarily dismissed, it "became a final land use decision with preclusive effect for the issues it resolved"—in particular, that the composting use was lawfully established and that the use has been ongoing and continuous since 1991. Petitioners take the position that the nonconforming-use determination required by Condition 1 of the Franchise Agreement was simply a "recognition that the prior decisions did not resolve all potentially relevant nonconforming use issues," such as the scope and extent of the nonconforming use.

A major flaw in petitioners' reasoning that the 2011 franchise authorization is preclusive of subsequent action by the county (specifically, the denial of petitioners' application for a nonconforming-use determination required by the 2014 franchise agreement) is that the 2011 franchise authorization itself recognized that it was not the final say; rather, it directed the staff to negotiate a franchise agreement with

petitioners for the composting facility.[5] In other words, the 2011 authorization contemplated that there would be subsequent action—the final franchise agreement. And, the first condition of that negotiated agreement states, unequivocally, that "[a] requirement of this Franchise Agreement is that Franchisee [petitioners] has a valid land use," followed by the specific directive requiring petitioners to apply for and receive, within a specified timeframe, a Type II final nonconforming-use determination from the county Department of Land Use and Transportation. Thus, the import of Condition 1 is that, for petitioners to establish a valid land use, petitioners must obtain a valid nonconforming-use determination for the composting facility, notwithstanding language in the 2011 franchise authorization indicating that it *was* a lawful nonconforming use. The 2011 franchise authorization resulted from petitioners' application under WCC 8.08, which, as noted, is the county ordinance governing the issuance of franchises for the operation of solid waste disposal sites, and is distinct from the county's land use permitting process. Thus, understood in context, the 2011 franchise authorization was merely a preliminary step toward the final franchise agreement, which, in turn, required a final nonconforming-use determination by the Department of Land Use and Transportation to verify that petitioner has a "valid land use."

Petitioners' contrary position—that Condition 1 of the 2014 franchise agreement was intended simply to resolve outstanding issues regarding the scope and extent of the previously established nonconforming-use determination made in the 2011 franchise authorization—finds no support in the text of the agreement. The agreement patently requires, as

---

[5] Beyond stating that the 2011 authorization was a "final" decision, petitioners also do not explain why it would have preclusive effect. The cases cited by petitioners—*Doty v. Coos County*, 185 Or App 233, 239, 59 P3d 50 (2002), *adh'd to as modified on recons*, 186 Or App 580, 64 P3d 1150 (2003), and *Hardtla v. City of Cannon Beach*, 183 Or App 219, 226, 52 P3d 437, *rev den*, 335 Or 90 (2002)—are inapposite.

Before LUBA, petitioners raised an equitable estoppel argument, contending that, because the county has represented multiple times since 1991 that the composting facility is a lawful use, including in the 2011 franchise authorization, the county is estopped from now taking the position that the facility is not a lawful use. LUBA rejected that assignment of error, and petitioners do not challenge that ruling on judicial review.

a "condition of approval," that petitioner apply for and obtain "a final non-conforming use determination for the [f]acility," and does not purport to limit or qualify in any manner the determination that petitioner is required to obtain. Rather, the agreement contemplates that every aspect of the issue of nonconforming use would be determined through the county Department of Land Use and Transportation process, including establishing the existence of such a use.

Moreover, when the 2014 agreement was negotiated, an appeal of the 2011 franchise authorization was still pending before LUBA; thus, the parties would not have understood the 2011 franchise authorization to be conclusive on whether the composting operation was a lawful nonconforming use. That circumstance also undercuts petitioners' contention that Condition 1 did not encompass that question.

Petitioners also point out that, in *Grabhorn I*, the county took the position that the case was moot because the 2011 franchise authorization gave the petitioner, Grabhorn, Inc., the relief that it had requested—specifically, a declaration "that the 1991 LUCS established [the petitioner's] composting operation as a lawful nonconforming use," 255 Or App at 374—though we held that the case was *not* moot, *id.* at 375. To the extent that petitioners are suggesting that, in rejecting the county's mootness argument, we also necessarily held that the county's 2011 franchise authorization would, at some point in the future, conclusively establish the nonconforming use, petitioners are mistaken. In holding the appeal in *Grabhorn I* to be justiciable, we stated:

> "The fact that review of the county's decision [in the 2011 franchise authorization] is still pending before LUBA precludes any conclusion that the county's subsequent action afforded [the petitioner] final resolution of the matter involved in this appeal. Until the legality of the county's franchise decision becomes unalterable by legal process, the issue raised in this appeal is not rendered moot by the county's decision and order."

*Id.* at 375. Thus, in *Grabhorn I*, we did no more than reject the county's argument that the case was moot as a result of the 2011 franchise authorization, for the reason that that

action was not yet final. Our opinion implied nothing as to the legal consequences of the 2011 franchise authorization if and when it became final. Petitioners' suggestion reads more into our decision in *Grabhorn I* than it can legally bear.

In sum, we reject petitioners' argument that LUBA erred in concluding that the 2011 franchise authorization was not a binding land use decision establishing petitioners' composting operation to be a lawful nonconforming use.

### 2. *1991 LUCS*

Petitioners next argue that LUBA's decision is unlawful in substance because LUBA misapplied the substantial evidence test in reviewing the hearings officer's decision that the 1991 LUCS did not establish the composting facility to be a lawful nonconforming use. For the reasons that follow, we again disagree with petitioners.

The 1991 LUCS was issued by the county at the request of DEQ in connection with petitioners' application for a renewal of their solid waste disposal permit in 1991.[6] As we explained in *Grabhorn I*,

"[a] LUCS is a document state agencies use to determine whether permits and approvals affecting land use are consistent with local government comprehensive plans. A LUCS is required for nearly all DEQ permits and certain other DEQ approvals and certifications that affect land use, including renewals of permits that involve a substantial modification or intensification of the originally permitted activity."

255 Or App at 371 n 1; *see* ORS 197.180(1) (requiring state agencies to "carry out their planning duties, powers and

---

[6] As mentioned, the legal effect of the 1991 LUCS was also the subject of the litigation in *Grabhorn I*. Specifically, in that case, the petitioner, Grabhorn, Inc., sought a declaratory judgment that the 1991 LUCS established its composting operation to be a lawful nonconforming use after the county refused to confirm— in connection with DEQ's requirement that the petitioner renew its solid waste disposal permit in 2007—that the 1991 LUCS covered the petitioner's composting operation. 255 Or App at 372-74. The trial court dismissed the declaratory judgment action for lack of jurisdiction, and we affirmed, concluding that the petitioner's requested relief required a land use decision—that is, "[a] decision about whether [the petitioner's] current operation is permitted"—subject to LUBA's exclusive jurisdiction under ORS 197.825. 255 Or App at 376-80.

responsibilities and take actions that are authorized by law with respect to programs affecting land use" "[i]n compliance with [statewide planning] goals, rules implementing the goals," and related rules and "[i]n a manner compatible with acknowledged comprehensive plans and land use regulations"); OAR 340-018-0000 (OAR chapter 340, division 18, establishes DEQ "policy and procedures to assure that [DEQ] activities determined to significantly affect land use are carried out in a manner that complies with the statewide land use goals and are compatible with acknowledged comprehensive plans").

As the 1991 LUCS form explained,

"[a]n applicant seeking a [DEQ] permit or approval is required to submit a LUCS to the affected local government(s) for a determination of compatibility with the local comprehensive plan(s). Typically, a local compatibility review includes a determination that the use or proposed use is allowable within its given zoning designation. The local government must include written findings of fact substantiating its determination. Required findings must 1) State the relevant criteria, standards or policies; (2) State the facts relied upon in rendering the decision; and 3) State the conclusions and reasoning, referencing applicable policies."

(Underscoring in original.)

The first part of the 1991 LUCS identified petitioner Grabhorn, Inc., as the applicant. It described the "specific source/facility that requires a permit/approval" as a "[s]olid waste disposal site" and the "type of business or product or service the business provides" as "[d]emolition landfill and recycling." The part of the 1991 LUCS completed and signed by the county indicates (by checkbox) that the facility is an "allowed outright use," and states:

"Based on attached findings (Attachment A), the existing use is a nonconforming use which may continue to operate without review by the County. Under Community Development Code, Section 440, Nonconforming Uses (Attachment B), the existing operation is not considered to be an alteration or expansion to the use. Therefore, no permit is required from the County."

Attachment A—that is, the facts relied upon by the county in determining the nonconforming use—consists of a four-page letter prepared by petitioner's attorney. The letter describes the history of the business as a landfill; it also states that, "[i]n addition to and in conjunction with land-filling operations, Mr. Grabhorn has since the 1950's performed sorting, chipping, and *recycling, turning demolition debris into usable mulch and wood chips.*" (Emphasis added.) The letter recites that "[t]he county has twice declared [petitioner's] landfill to be a nonconforming use," explains why those decisions were correct, and argues that, because land-filling is a "diminishing asset" use, it should be allowed to continue and extend to the entire property. Attachment B, as noted, is a copy of the county's then current Community Development Code (CDC) section 440, pertaining to non-conforming uses. The word "compost" or "composting" does not appear in the 1991 LUCS or in the attached find-ings, and, at the time the LUCS was issued, there were no standards in the CDC defining or regulating composting operations.

Petitioners argued to the hearings officer that the 1991 LUCS necessarily encompassed the composting facility as part of petitioners' "recycling operations." The hearings officer disagreed, reasoning that the text of the LUCS does not identify composting as an authorized use and, instead, describes the business as a "demolition landfill and recy-cling" operation:

> "In the letter accompanying the 1991 LUCS, [petitioner's] attorney describes that since the 1950s Grabhorn has 'per-formed sorting, chipping, and recycling, turning demotion debris into usable mulch and wood chips.' The activities listed in the letter do not include 'cooking' or 'decompos-ing' the chipped material. *** If the applicant had been composting for decades, he would have specifically included that activity in applying for the LUCS. As discussed below, 'mulch' is not 'compost' under any applicable authority's regulations."

The hearings officer also noted that DEQ's unwillingness to rely on the 1991 LUCS in connection with petitioners' renewal of their DEQ permit in 2009 "undermines it as

having continued validity that can be expanded to encompass the composting operation."[7] Accordingly, the hearings officer concluded that the 1991 LUCS did not encompass the composting operation. LUBA affirmed.

On review, petitioners contend that LUBA's decision is unlawful in substance because LUBA misapplied the substantial evidence test in affirming the hearings officer's decision that the 1991 LUCS did not establish the composting facility to be a lawful nonconforming use. Specifically, they contend that there is nothing to suggest that LUBA evaluated evidence contrary to the hearings officer's decision—in particular, testimony from Delyn Kies, the county's Solid Waste Management Coordinator at the time that the county issued the 1991 LUCS.

Keis testified that, at the time that she assumed her position with the county in the latter part of 1990, petitioners "maintained a yard debris recycling operation. That is, [petitioners were] processing organic material, through, among other things, biological decomposition, to create product for resale." She referred to petitioners' curing or "cooking" shredded debris in "windrows," and processing it for resale after it had "properly decomposed." She also stated that, at the time, "the term compost or composting" "was not typically used" and "[w]e used the general term recycling to mean any program or operations that took a waste material and diverted it into a useable product and diverted it from landfill." In petitioners' view, that testimony "conclusively

---

[7] The hearings officer referenced our opinion in *Grabhorn I*, in which we had observed that, in the July 9, 2010, letter determining that the 1991 LUCS was legally insufficient to establish the lawfulness of the composting operation, the county, like DEQ, had "considered the change in [the petitioner's] business from a 'landfill and recycling facility' to a 'composting only operation' to be an alteration that necessitated a new nonconforming use determination" and had stated that "any factual or legal determination about the nonconforming status of [the petitioner's] composting operation required the exercise of discretion and must be done in the context of a current application for a nonconforming use determination, not by analysis of a LUCS." 255 Or App at 373 (footnote omitted). We also held that the petitioner's request for declaratory relief in *Grabhorn I* was, in effect, a challenge to the lawfulness of the county's July 9, 2010, letter, which, we decided, constituted a local government's interpretation of its past land use decision—*specifically, that the 1991 LUCS was insufficient to establish the nonconforming use*—and, therefore, was a "land use" decision subject to LUBA's exclusive review. We note that the petitioner did not appeal that 2010 land use decision to LUBA.

resolves that the composting operation was lawfully established," and, therefore, LUBA erred in concluding that the hearings officer's decision to the contrary was supported by substantial evidence.

We disagree. Petitioners' "substantial evidence" argument is logically dependent on the (unstated) premise that *if*, as a factual matter, composting was occurring on petitioners' property at the time that the county issued the 1991 LUCS, then composting was *necessarily* included in the nonconforming use described in the LUCS as "[d]emolition landfill and recycling." However, petitioners do not explain why one follows from the other, and the record frankly indicates otherwise. As explained above, it is the applicant who is responsible for describing the nature and scope of the land use compatability determination sought by the LUCS. The county then must make that determination, stating in writing the facts and criteria on which it relied. Here, petitioners did not include composting in their LUCS request, nor did the findings (also in this case prepared by petitioners) on which the county relied in issuing the LUCS reference or describe composting activities. Thus, it does not necessarily follow that, if composting was occurring on the property when the 1991 LUCS was issued, composting was covered by the LUCS. Stated another way, it is not impossible that composting could be occurring on the property and not be covered by the LUCS, due to the scope of petitioners' LUCS application and the findings on which the LUCS was eventually based.[8]

---

[8] Another problem with petitioners' argument is that it fails to explain the legal theory under which the 1991 LUCS would preclude the county's action here, even if the 1991 LUCS were understood to encompass composting. *See Nelson v. Emerald People's Utility Dist.*, 318 Or 99, 104, 862 P2d 1293 (1993) (decision on an issue in one proceeding may preclude relitigation of the issue in another proceeding if (1) "[t]he issue in the two proceedings is identical"; (2) "[t]he issue was actually litigated and was essential to a final decision on the merits in the prior proceeding; (3) "[t]he party sought to be precluded has had a full and fair opportunity to be heard on that issue"; (4) "[t]he party sought to be precluded was a party or was in privity with a party to the prior proceeding"; and (5) "[t]he prior proceeding was the type of proceeding to which this court will give preclusive effect"); *see also Grabhorn I*, 255 Or App at 373 (noting county's concern that determination about nonconforming-use status of Grabhorn's composting operation "required the exercise of discretion and must be done in the context of a current application for a nonconforming use determination, not by analysis of a LUCS" (footnote omitted)).

## D.  *State Agency Program Coordination Rules*

Finally, petitioners argue that LUBA "made a decision unlawful in substance in concluding the administrative rules under OAR [chapter 340,] division 18 [the state agency program coordination rules] allowed the County to change its land use compatibility determination after DEQ has issued a permit in reliance of that determination." We understand petitioner to contend that, because DEQ issued a composting facility registration to petitioners in 2013, in reliance of the 2011 franchise authorization, the county lacks authority to "withdraw or change [that] land use approval."[9] Petitioner relies on OAR 340-018-0050(2)(a)(E) for that proposition. OAR 340-018-0050(2) provides:

"The [DEQ] shall rely on the compatibility procedures described in Section III, subsection (3), and Section IV, subsections (2), (3), and (4) of the SAC Program document[10] to assure compatibility with an acknowledged comprehensive plan, which include but may not be limited to the procedures described below:

"(a)  An applicant's submittal of a LUCS which provides the affected local government's determination of compatibility:

"* * * * *

"(B)  The [DEQ] shall rely on an affirmative LUCS as a determination of compatibility with the acknowledged comprehensive plan unless otherwise obligated by statute;

"(C)  If the [DEQ] concludes a local government LUCS review and determination may not be legally sufficient, the

---

[9]  Petitioners' briefing is less than clear whether it is the 2011 franchise authorization or the 1991 LUCS that, in petitioners' view, represents the "land use compatibility determination" that the county is subsequently prohibited from changing under the administrative rules. LUBA considered petitioners to be relying on the 2011 franchise authorization and, accordingly, we do the same. Relatedly, petitioners do not explain why the 2011 franchise authorization could be a "compatibility determination" for purposes of the rule, when, in context, the rule appears to be referring to a LUCS. However, given our conclusion, we need not address that issue.

[10]  "SAC Program document" is defined to mean DEQ's "State Agency Coordination Program document developed pursuant to ORS 197.180." OAR 340-018-0020(13).

[DEQ] may deny the permit application and provide notice to the applicant. In the alternative, when the applicant and local government express a willingness to reconsider the land use determination, the [DEQ] may hold the permit application in abeyance until the reconsideration is made;

"* * * * *

"(E) *A local government may withdraw or modify its compatibility determination any time prior to the issuance of a permit*;

"* * * * *

"(G) If a local government land use compatibility determination or underlying land use decision is appealed subsequent to the [DEQ's] receipt of the LUCS, the [DEQ] shall continue to process the action unless ordered otherwise by LUBA or a court of law stays or invalidates a local action;

"(H) If a LUCS is successfully appealed after the [DEQ] has issued a permit, the [DEQ] may either proceed to revoke or suspend the permit or may decide to wait until the land use appeals process is exhausted."

(Emphasis added.)

In particular, petitioners argue that, "because subparagraph (E) limits the withdrawal or modification of a compatibility determination to 'any time prior to the issuance of a permit,' that provision then restricts a local government from withdrawing that determination *after* issuance of the permit." (Emphasis in original.) As a result, in petitioners' view, once respondent Kamp withdrew his LUBA appeal of the 2011 franchise authorization, the county's "determination that Petitioner's compost use was a lawful nonconforming use became final, so did DEQ's permit," and "[n]othing gives the county authority to withdraw or substantively modify [that determination]."

Petitioners' argument thus rests entirely on a negative implication—that, because subparagraph (E) of OAR 340-018-0050(2)(a) specifically "authorizes" a local government to withdraw or modify a compatibility determination

before a DEQ permit has issued, then the local government must also be prohibited from making any changes to a compatibility determination after a permit has issued. We conclude, as did LUBA, that the rule was not so intended.

First, it is not insignificant that the rule does not expressly state that it is intended to restrict the local government's authority to change a land use determination once a permit has been issued; it would be unlikely, in our view, for a state agency to depend on a negative implication to establish such a far-reaching proposition. Second, as LUBA reasoned, other provisions of the rule indicate otherwise: for example, subparagraph (H) contemplates local governmental action *subsequent* to DEQ's issuance of a permit. Moreover, the rule is designed to ensure state agency compatibility with local comprehensive plans and land use regulations, not to restrict the local government's ability to alter those plans and regulations. *See* OAR 340-018-0000 ("In accordance with ORS 197.180, this rule establishes Department policy and procedures to assure that Department activities determined to significantly affect land use are carried out in a manner that complies with the statewide land use goals and are compatible with acknowledged comprehensive plans."); OAR 340-018-0050(1) ("Commission or Department actions under OAR 340-018-0030 shall be compatible with local government acknowledged comprehensive plans to the extent required by law."); OAR 340-018-0050(2) (providing in part that DEQ shall rely on the compatibility procedures, "which include *but may not be limited to* the procedures described below," including subparagraph (E), to ensure compatibility with acknowledged comprehensive plans (emphasis added)).

Given that context, we are disinclined to read into the rule the broad prohibition urged by petitioners. In our view, a better understanding of subparagraph (E) is that it is a cautionary statement designed to alert permit applicants (and other interested parties) that, before the issuance of a DEQ permit, it is possible that a local government might withdraw or alter its land use compatibility determination. It says nothing about the actions that a local government might take after DEQ issues a permit in reliance on a LUCS. In short, we agree with LUBA that petitioners

have not demonstrated that OAR 340-018-0050(2)(a)(E) precluded the county from altering its 2011 franchise authorization after the DEQ permit had issued.

## III.   CONCLUSION

In sum, LUBA did not err in sustaining the county hearings officer's denial of petitioners' application for verification of their composting facility as a nonconforming use.

Affirmed.