No. 691 October 2, 2024 277

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

FERGUSON CREEK INVESTMENT, LLC,
*Respondent,*

*v.*

LANE COUNTY,
*Respondent,*
*and*

LANDWATCH LANE COUNTY,
*Petitioner.*

Land Use Board of Appeals
2023087; A184345

Submitted July 10, 2024.

Sean Malone filed the brief for petitioner.

Zack P. Mittge and Hutchinson Cox filed the brief for respondent Ferguson Creek Investment, LLC.

No appearance for respondent Lane County.

Before Aoyagi, Presiding Judge, Joyce, Judge, and Balmer, Senior Judge.

AOYAGI, P. J.

Reversed and remanded.

**AOYAGI, P. J.**

Respondent Ferguson Creek Investment, LLC, applied to Lane County for nonconforming-use verification for a house (the current dwelling) located on property zoned for exclusive farm use. The county denied the application. The county found that, although a farmhouse had lawfully existed in a similar location in the past, the current house is a different dwelling, and it concluded that respondent had therefore failed to show the establishment of a valid nonconforming use. On appeal, the Land Use Board of Appeals (LUBA) reversed and remanded. LUBA reasoned that it was a violation of ORS 215.130(11) for the county to look back more than 20 years to determine whether the current house is the same or a different dwelling as the lawfully built farmhouse. As described below, we agree with petitioner LandWatch Lane County that LUBA misconstrued the 20-year-look-back provision in ORS 215.130(11) and, accordingly, reverse and remand.[1]

## FACTS

The county hearing official's factual findings were binding on LUBA, unless LUBA found them not to be supported by substantial evidence, which did not occur. *See* ORS 197.835(9)(a)(C) (providing LUBA with authority to reverse a local government decision if the local government "[m]ade a decision not supported by substantial evidence in the whole record"); ORS 197.835 (not otherwise providing LUBA authority to modify local governments' factual findings). We are therefore similarly bound by those findings. *See* ORS 197.850(8) ("Judicial review of an order issued under ORS 197.830 to 197.845 must be confined to the record. The court may not substitute its judgment for that of the board as to any issue of fact."). We state the facts accordingly.[2] Unless otherwise specified, all quotations are from the county's findings.

---

[1] Given our disposition, we do not address petitioner's other assignment of error, challenging LUBA's handling of a preservation issue.

[2] The hearings official's order and opinion incorporated by reference parts of several other documents. That poses some challenges in ascertaining the hearings official's precise factual findings, but we have attempted to identify and state all relevant findings.

In the late 1940s, a farmhouse was built on petitioner's property. It was used as a residence until the late 1970s, and it existed in some form "until 1984, if not 1992."

Meanwhile, in 1980, for the first time, the county zoned the property. In LUBA's view, the farmhouse became a nonconforming use at that time because, although a farmhouse was allowed under the 1980 zoning laws, it was allowed only in conjunction with farm use, making it a regulated or restricted use.[3]

In 1985, the property on which the farmhouse stood was partitioned from a larger parcel. By then, the farmhouse was "no longer fit for occupancy if it was still standing at all." No other houses existed on the property.

In 1992, county tax employees physically inspected the property. They described the only structure, the farmhouse, as an old house "in such a poor state that its assessed value was limited to its value for material salvage purposes."

Sometime later, probably between 1998 and 2004, where the old farmhouse had stood, either "an entirely new structure" was built, or a "substantial restoration of the former structure" occurred. (In context, it appears that, by "substantial restoration," the county meant building a similar house to the old farmhouse, perhaps using some of the salvage materials identified in 1992, in nearly the same location.) Either way, none of the required planning and building approvals were obtained.

Presently, there are two houses on the property. One is a larger house that was constructed in the late 1990s or early 2000s, without the necessary permits and approvals. The other is a smaller house located in a very similar but not identical location to where the farmhouse stood. Both houses have the outward appearance of houses that could have been built in the 1940s, even though the larger house is less than 30 years old. The smaller house is the subject of this proceeding. LUBA referred to it as the "Smaller

---

[3] When, if ever, the farmhouse became a nonconforming use has been a subject of dispute. We ultimately agree with petitioner that it is irrelevant whether the farmhouse ever became a nonconforming use, because the current house is a different dwelling.

Dwelling," and we refer to it as the "current house" or "current dwelling."

Respondent applied to the county for nonconforming-use verification for the current house in September 2021. The county denied the application, concluding that respondent had failed to show that the nonconforming use was lawfully established.[4] The county explained that, ordinarily, when there is evidence that an old house existed in the past in a place where an old-looking house now exists, it is reasonable to infer that they are the same dwelling. Here, however, the county viewed the evidence as defeating that inference. The lawfully built farmhouse was uninhabitable by 1985, "if it was still standing at all," and had only salvage value by 1992. Meanwhile, the current house is inhabitable, it is located in a slightly different place "askew" from where the farmhouse stood, and the fact that it looks like it could have been built in the 1940s means little when the same is true of the larger house that is less than 30 years old. Given the evidence, the county decided that the current house is not the same dwelling as the lawfully built farmhouse and that respondent therefore failed to show that the current house was established as a valid nonconforming use before zoning went into effect.

Respondent appealed to LUBA, which reversed the county's decision. As described in more detail below, LUBA concluded that the county had violated ORS 215.130(11) when it looked back more than 20 years to determine whether the current house is the same or a different dwelling from the lawfully built farmhouse. *See* ORS 215.130(11) ("For purposes of verifying a use under subsection (5) of this section, a county may not require an applicant for verification to prove the existence, continuity, nature and extent of the use for a period exceeding 20 years immediately preceding the date of application.").

Petitioner seeks judicial review of LUBA's order, arguing that LUBA misconstrued ORS 215.130(11). We

_____

[4] The county initially denied the application on a different ground, LUBA reversed and remanded that decision, and the county then denied the application on the stated ground. The earlier proceedings are not at issue, so we do not discuss them.

review the order to determine whether it is "unlawful in substance." ORS 197.850(9)(a). "A LUBA order is unlawful in substance if it represented a mistaken interpretation of the applicable law." *Nicita v. City of Oregon City*, 317 Or App 709, 716, 507 P3d 804, *rev den*, 370 Or 404 (2022) (internal quotation marks omitted).

THE LAW OF NONCONFORMING USES

Before addressing the specifics of this case, we provide a brief overview of the law of nonconforming uses, which allows landowners to continue using property in a way that would not be allowed under current zoning laws, if the use lawfully existed when the zoning laws went into effect and has continued to the present day.

ORS 215.130(5) provides that "[t]he lawful use of any building, structure or land at the time of the enactment or amendment of any zoning ordinance or regulation may be continued." The use must be continued without interruption for it to remain lawful. If the use is interrupted or abandoned, then the right to continue it without complying with current zoning laws is lost. *See* ORS 215.130(7)(a) ("Any use described in subsection (5) of this section may not be resumed after a period of interruption or abandonment unless the resumed use conforms with the requirements of zoning ordinances or regulations applicable at the time of the proposed resumption."); *see also* ORS 215.130(10)(b) (allowing local governments to establish "criteria to determine when a use has been interrupted or abandoned under [ORS 215.130(7)]").

As a policy matter, however, the legislature has decided to limit the lookback period for continuous use to 20 years. Under ORS 215.130(11), "[f]or purposes of verifying a use under [ORS 215.130(5)], a county may not require an applicant for verification to prove the existence, continuity, nature and extent of the use for a period exceeding 20 years immediately preceding the date of application." In other words, if a use was lawfully established, and it has been continuous for the 20 years immediately preceding the application date, then the county must recognize it as a lawful nonconforming use, regardless of any interruptions in

the use that may have occurred more than 20 years in the past.[5]

Assessing the lawfulness of a nonconforming use is thus a two-step process. *Aguilar v. Washington County*, 201 Or App 640, 648, 120 P3d 514 (2005), *rev den*, 340 Or 34 (2006). The first question is whether the use was lawfully established when the relevant zoning laws went into effect. *Id.* If so, the second question is whether the use has been continuous, with ORS 215.130(11) limiting the relevant period to the 20 years preceding the application date. *Id.*

The petitioners in *Aguilar* had argued that ORS 215.130(11) required the county to approve a nonconforming use that had been continuous for 20 years, regardless of whether it was lawfully established when the relevant zoning laws went into effect. *Id.* at 645. That is, they argued that the 20-year lookback period in ORS 215.130(11) precluded the county from looking back more than 20 years to determine the lawful establishment of the nonconforming use. We rejected that argument as contrary to the statutory text, context, and legislative history, concluding that the legislature intended a two-step process and that the 20-year limitation apply only at the second step.[6] *Id.* at 650. ORS 215.130(11) "was not intended to alter the requirement that, to prove the existence of a nonconforming use, the applicant

---

[5] Prior to the enactment of ORS 215.130(11), an applicant had to prove that the use had never been interrupted or abandoned since its lawful establishment, whereas now an applicant needs to show only that it has not been interrupted or abandoned during the 20 years preceding the application date. *Grabhorn v. Washington County*, 279 Or App 197, 205, 379 P3d 796, *rev den*, 360 Or 568 (2016).

[6] As discussed in *Aguilar*, our reading of the statute was strongly supported by the legislative history. 201 Or App at 649-50 (discussing legislative history); *see, e.g.*, Tape Recording, House Committee on Water and Environment, Senate Bill (SB) 470, May 10, 1999, Tape 158, Side 1 (statement of Dave Hunnicutt) ("Essentially what we are doing with [the bill] is saying that the local government, when determining whether a nonconforming use exists can require the land owner to show two things: One, that the building was lawfully—or whatever the structure was—was lawfully sited. Two, that it's been in continuous operation for no more than twenty years—they can't make you go back more than twenty years in other words."); Testimony, Senate Water and Land Use Committee, SB 470, Mar. 9, 1999, Ex. H (letter from Larry George) ("Under SB 470 a landowner must prove two things: 1) [t]hat the use, when initiated, was a legal use allowed in the zone and that the landowner complied with the permit requirements to establish the use, and 2) [t]hat the use has existed continuously for at least the past 10 years, but the landowner cannot be required to prove more than 20 years of continual use." (Boldface omitted.)).

must establish its lawfulness before the zoning ordinance or regulation went into effect." *Id.*

A more recent illustration of the proper application of the two-step process is *Grabhorn v. Washington County*, 279 Or App 197, 379 P3d 796, *rev den*, 360 Or 568 (2016). There, the respondent sought nonconforming-use verification of the "composting operation" on their property. *Id.* at 204. The county denied the application, concluding that the applicants had shown continuous use for the 20 years preceding the application date but had not shown that the use was lawfully established before the zoning laws went into effect. *Id.* Although there was testimony that "composting" took place on the property as early as 1962, government records "indicated that the only recycling activities occurring on the property before 1989 were the grinding or chipping of woody waste" and "that there were recognized differences at the time between those activities and 'composting.'" *Id.* at 206. On that record, the county concluded that the applicants had not shown that the current "composing operation" was lawfully established when the relevant zoning laws took effect. *Id.*

LUBA affirmed the county's decision, and we in turn affirmed LUBA's decision, because the "petitioners did not meet their burden of establishing that the use lawfully existed on the date zoning made the use nonconforming." *Id.* at 209. In deciding the case, the county, LUBA, and we all took as a given that, under *Aguilar*, the county was free to look as far back as necessary to determine whether the "composting operations" had been lawfully established as a use before the zoning laws went into effect (the first step) and that the 20-year lookback period in ORS 215.130(11) applied only to the continuous-use determination (the second step). *See id.*

With that understanding of the basic law of nonconforming uses, we turn to the instant case, starting with LUBA's reasoning for overturning the county's decision.

## LUBA'S REASONING

In its order reversing the county's decision, LUBA correctly described the two-step process for establishing a

valid nonconforming use: First, respondent had to show that the use was lawfully established before the relevant zoning laws went into effect, and the county could look as far back in time as needed to make that determination. Second, if the use was lawfully established, then respondent next had to show that it had been continuous, with ORS 215.130(11) limiting the relevant period to the 20 years immediately preceding the application date.

LUBA then proceeded to apply the two-step process and, in doing so, concluded that the county had violated ORS 215.130(11) by looking back more than 20 years to determine whether the current house is the same or a different dwelling as the lawfully built farmhouse. LUBA reasoned that because the farmhouse was established as a lawful use before 1980 when zoning went into effect, the first step of the analysis was satisfied, and the county needed to proceed to the second step, without considering "changes to the nonconforming use" that occurred more than 20 years earlier:

> "To summarize, petitioner must establish that the [Current] Dwelling was lawfully established prior to 1980, even if this requires looking back more than twenty years before the date of the application for nonconforming use verification. However, once that is established, the county is not allowed to consider changes to the nonconforming use beyond September 2001, more than twenty years prior to petitioner's application."

In LUBA's view, the county hearings official violated ORS 215.130(11) by considering whether the farmhouse had been, in LUBA's words, "abandoned or altered"[7] between 1980 (when zoning went into effect and, in LUBA's view, the farmhouse became a lawful nonconforming use) and 2001 (the beginning of the 20-year lookback period for respondent's application).

---

[7] "Alteration" is a term of art. ORS 215.130(5) provides that, when a lawful nonconforming use has been established, "alteration" of the use may be permitted subject to ORS 215.130(9). ORS 215.130(9) defines "alteration" of a nonconforming use to include "[a] change in the use of no greater adverse impact to the neighborhood" and "[a] change in the structure or physical improvements of no greater adverse impact to the neighborhood." ORS 215.130(10)(c) allows the county to condition approval of an alteration of a use "in a manner calculated to ensure mitigation of adverse impacts as described in [ORS 215.130(9)]."

Having concluded that the county violated ORS 215.130(11), LUBA reversed and remanded to the county for new continuous-use findings.

## ANALYSIS

On judicial review, petitioner argues that LUBA misconstrued ORS 215.130(11) and, as a result, incorrectly concluded that the current dwelling "was lawfully established prior to 1980." Pointing to the county's finding that the current house is a different dwelling from the 1940's farmhouse, petitioner argues that the county correctly concluded that the current house has not been shown to have been a lawful use when established. Petitioner argues that LUBA's reading of ORS 215.130(11) as prohibiting the county from looking back more than 20 years to determine whether they are the same dwelling is legally wrong under *Aguilar*.

In response, respondent defends LUBA's order and reasoning; however, respondent takes issue with the county's finding that the current house is not the same dwelling as the farmhouse. Respondent also challenged that finding before LUBA, claiming that it was not supported by substantial evidence, but LUBA did not reach the issue. Consequently, as previously described, the county's finding is binding on judicial review of LUBA's order, although LUBA will need to address respondent's factual challenge on remand because it did not reach it previously. The only issue properly before us is whether the county violated ORS 215.130(11) by looking back more than 20 years to determine whether the current house is the same dwelling as the farmhouse. We agree with petitioner that it did not. LUBA erred in concluding otherwise.

LUBA construed ORS 215.130(11) as preventing the county from denying respondent's application on the basis that the dwelling established before 1980 (the 1940's farmhouse) was not the same dwelling as the current house for which nonconforming use verification was sought. In LUBA's view, when a local government is deciding at the first step of the analysis whether "the use" at issue was lawfully established before the relevant zoning laws went into effect, the local government cannot consider any subsequent

"alteration" of the nonconforming use that occurred outside the 20-year lookback period in ORS 215.130(11).

It may be that, for purposes of a nonconforming-use application, there are some types of changes to a lawfully established use that a local government is not allowed to consider under ORS 215.130(11) if they occurred outside of the 20-year lookback period.[8] Even if that is so, however, the county did not err in this case by looking back as far as necessary to determine whether the current house was lawfully established as a nonconforming use—and then concluding that it was not because the current house is a different dwelling from the farmhouse and respondents did not show that the current dwelling (as opposed to the farmhouse) was lawfully established as a nonconforming use.

"Uses" of land are diverse, and many uses are not limited to a particular building or any particular kind of structure. *See, e.g.*, ORS 215.203(2)(a) (defining "farm use" broadly); *see also Polk County v. Martin*, 292 Or 69, 79, 636 P2d 952 (1981) (holding that a quarry use was lawfully nonconforming, where it was lawful before the restrictive zoning took effect and there was no "dispute that the property was committed to this use and was so used"). However, a residential use, at least on farmland, is tied to a particular building, specifically a particular dwelling. *See, e.g.*, ORS 215.283(1)(d), (e), (p) (listing uses allowed on farmland and identifying residential uses as "dwellings"); *see also* ORS 215.213(1)(d), (f), (q) (similar); *Webster's Third New Int'l Dictionary* 706 (2002 ed unabridged) (defining "dwelling" as "*a building or construction* used for residence" (emphasis added)).

---

[8] In LUBA's own case law, LUBA has interpreted ORS 215.130(11) broadly, in part because ORS 215.130(11) refers to the "existence, continuity, nature and extent of the use[.]" *See, e.g.*, *Reeder v. Multnomah County*, 59 Or LUBA 240 (2009) ("The effect of ORS 215.130(11) is to render legally irrelevant evidence regarding the existence, continuity or nature and extent of the use for the period exceeding 20 years from the date of application." (Internal quotation marks omitted.)). While facially plausible, LUBA's broad reading of the statute is in tension with our statement in *Aguilar* that, in enacting ORS 215.130(11), the legislature intended "merely to establish a limit on the period of time that an applicant must prove that a use continued uninterrupted," 201 Or App at 650, and with the legislative history to that effect cited in *Aguilar*.

Because a residential "use" on farmland refers to a specific dwelling, that use necessarily ceases to exist when the specific dwelling ceases to exist. If a new dwelling is built, it is a new residential use.[9] That is important, because it means that an applicant seeking to establish that the current dwelling was lawfully established before zoning went into effect cannot do so by showing that a *different* dwelling was lawfully established before zoning went into effect—regardless of whether a lawful procedure might have existed by which, in theory, the applicant (or prior owner) could have potentially achieved the new dwelling without violating land use laws.[10] It is still a different use, because it is a different dwelling, and the applicant will have failed to show that the current use—that is, the current dwelling—was lawful when established. *See Grabhorn*, 279 Or App at 204 (the applicant must show "that *the use* was lawful at the time a zoning ordinance or regulation went into effect" (internal quotation marks omitted and emphasis added)); *see also Aguilar*, 201 Or App at 649 (quoting legislative history to the effect that a landowner must show "[t]hat *the use*, when initiated, was a legal use allowed in the zone" (internal quotation marks omitted and emphasis added)).

We therefore hold that LUBA erred. Although the 1940s farmhouse was a lawful dwelling that was established before the zoning laws took effect, the county found that the current house is a different dwelling that was likely built between 1998 and 2004. It follows that the current dwelling is a different residential "use" and that the county correctly concluded that respondent had failed to prove that *that* use was lawfully established before the zoning laws took effect.

Reversed and remanded.

---

[9] The legislature allows construction of replacement dwellings on farmland under certain circumstances, ORS 215.283(1)(p), which is a deviation from that baseline rule, but those circumstances do not apply here.

[10] If the applicant *actually* followed a lawful procedure to achieve the new dwelling—which could perhaps include alteration under ORS 215.130(5), as suggested by LUBA—then the situation would be factually and legally different. We speak here only of theoretical procedures that were not actually followed.